IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:12cr48-MHT |
| MATTHEW DAVIDSON | ) | (WO) |

OPINION AND ORDER

Defendant Matthew Davidson, a former prison guard with the State of Alabama, pled guilty to two counts of deprivation of civil rights, 18 U.S.C. § 242, and one count of conspiracy to obstruct justice, 18 U.S.C. § 1512(k), in connection with the brutal beating of prisoner Rocrast Mack.  The matter is now before the court on Davidson's motion for specific performance of his plea agreement; he asks that the court find that he "has been compliant with the terms of the agreement, and has not otherwise materially breached the plea agreement."  Davidson's mot. for Spec. Perf. (Doc. No. 433) at 2.  For the reasons explained below, the motion will be denied.

## I. BACKGROUND

Davidson pled guilty to three of seven charges with the benefit of a plea agreement. Following his guilty plea, the government notified Davidson and the court that it views Davidson as having breached the plea agreement's cooperation provision, which required that Davidson "be available for interviews by federal officials and ... fully and truthfully respond to all questions asked of him." Add. to Pl. Agmt. (Doc. No. 183) 2 at ¶ 1. "[T]his cooperation agreement require[d] him to be truthful at all times." Id. The government contends that Davidson violated the plea agreement by making material, misleading omissions and being otherwise untruthful in his description of Mack's beating.

The court held an evidentiary hearing to determine whether Davidson breached his agreement.

II. DISCUSSION

A. "Sole Discretion"

The government asserts that it has the sole discretion to determine whether Davidson violated the terms of his plea agreement and that the holding of an evidentiary hearing was superfluous. The government bases its position on the provision in the plea agreement that states that, "the United States will have the sole discretion to decide whether the defendant has breached this agreement." Add. to Pl. Agmt. (Doc. No. 183) 3 at ¶ 3. The government does not cite any case in which a court applied such a provision to confer on the government total authority to decide whether a defendant breached his plea agreement; instead, it rests its argument on the plain language of the agreement and case law approving prosecutors' sole discretion to decide whether to file a motion for a substantial-assistance departure. See, e.g., United States v. Forney, 9 F.3d 1492, 1501 (11th Cir. 1993) (approving district court's

3

refusal to find government breached plea agreement by failing to move for a substantial-assistance departure where the plea agreement provided that the government would "consider" whether defendant qualified for substantial-assistance departure and that the determination was "solely" for the government to make).

The government's analogy to substantial-assistance departures is unpersuasive. It is entirely appropriate for a plea agreement to limit judicial review of the prosecutor's decision whether a defendant's cooperation qualifies for a substantial-assistance departure, because such discretion goes hand in hand with the prosecutor's traditional power to decide whether to pursue charges against any particular individual. See Wade v. United States, 504 U.S. 181, 185-86 (1992) ("[W]e see no reason why courts should treat a prosecutor's refusal to file a substantial-assistance motion differently from a prosecutor's other decisions....").[1] On the other hand,

---

1. Even in the substantial-assistance-departure context, however, courts maintain an obligation to review

the decision whether a defendant has breached a plea agreement is traditionally a matter for courts to decide. The important due-process implications of plea agreements, which defendants rely on in waiving their constitutional rights and conceding guilt, require courts to assess independently whether a defendant has violated his plea agreement.  See Santobello v. New York, 404 U.S. 257, 262 ("This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.").

In light of these due-process concerns, numerous courts of appeals have ruled that a court, not the government, must decide if the defendant is in breach of his agreement.  United States v. Guzman, 318 F.3d 1191, 1196 (10th Cir. 2003) ("[T]he government may not unilaterally declare a breach of a plea agreement; a

---

prosecutorial discretion where there is an allegation of an unconstitutional motive.  Wade, 504 U.S. at 185; Forney, 9 F.3d at 1502.

court must hold a hearing and make a finding that the defendant breached the agreement before the government is released from its obligations under the agreement."); United States v. Ataya, 864 F.2d 1324, 1329-30 (7th Cir. 1988) ("[A] plea agreement is a contract, ... but a contract in which special due process concerns for fairness and the adequacy of procedural safeguards obtain .... [a defendant is therefore] entitled to a pretrial hearing under the due process clause to determine if, in fact, a breach occurred."); United States v. Packwood, 848 F.2d 1009, 1011 (9th Cir. 1988) ("Plea agreements implicate important due process rights ... and so the process must be fair .... A court must determine a breach, with an evidentiary hearing if there are disputed issues of fact."); United States v. Calabrese, 645 F.2d 1379, 1390 (10th Cir. 1981) ("We believe that one requisite safeguard of a defendant's rights is a judicial determination, based on adequate evidence, of a defendant's breach of a plea bargaining agreement.")

cert. denied, 451 U.S. 1018 (1981); United States v. Simmons, 537 F.2d 1260, 1261-62 (4th Cir. 1976) ("[T]he question whether defendant did in fact fail to perform the condition precedent is an issue not to be finally determined unilaterally by the government, but only on the basis of adequate evidence by the Court .... There would be manifest impropriety in permitting the government, without satisfying a judge that the evidence proves that a defendant broke his promise, to escape from the obligation which the government undertook in the plea bargain.").

These cases make clear that a defendant has a due-process right to a judicial determination of whether he breached his plea agreement with the government. In light of this constitutional requirement, it remains to be seen (1) whether a plea agreement could, through express language such as the "sole discretion" provision, contract around, or waive, this requirement, and (2)

7

whether Davidson waived this due-process right when he entered into the instant plea agreement.

The Third Circuit Court of Appeals examined the effect of a "sole discretion" provision in determining whether a defendant satisfied his cooperation obligations in United States v. Swinehart, 614 F.2d 853, 858 (3d Cir. 1980). The cooperation provision in that case required the defendants to take a polygraph examination, but did not specify whether they had to pass the polygraph. The government argued that, because the plea agreement gave it "sole discretion" to decide whether the defendants fully cooperated, it could exercise that discretion and decide that failing the polygraph amounted to a failure to cooperate fully with the plea agreement. Id. at 857. The appellate court found some similarity with the Fourth Circuit's decision in Simmons, 537 F.2d at 1261, which it cited for the proposition that "there are limits to the Government's discretion which need not be specified in the plea agreement." Swinehart, 614 F.2d at 858.

Despite the government's argument that inclusion of the "sole discretion" provision was a ground for distinguishing Simmons, the appellate court refused to give the "sole discretion" provision the force the government wanted. Id. The appellate court accepted that "use of the term 'sole discretion' in a plea agreement ordinarily would give the prosecution a broad authority to ascertain whether the accused has cooperated," but it also insisted that the trial court, "because it has judicially approved the bargain, has a duty to inquire whether the terms have been followed"; while a court "should not substitute its judgment for the judgment vested by the defendant in the Government under the plea agreement," it likewise "should not permit the Government to use its 'sole discretion' to disregard its contractual commitments." Id. Unwilling to cede the government total authority to interpret the terms of its agreement and then decide if the defendant breached those terms, the appellate court instead remanded the case to

the trial court for a determination of the parties' understanding of the cooperation provision. Its analysis reveals a reluctance to accord the government absolute, sole discretion over the breach decision even in the presence of express language purporting to do just that, and it highlights the importance of preserving a role for the trial court.

As to whether Davidson's signing of the plea agreement constituted a waiver of his right to have the court determine a breach, courts do not presume waiver of fundamental rights, Johnston v. Zerbst, 304 U.S. 458, 464 (1938) ("[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege"), and the plea agreement nowhere specifies or explains that Davidson waived this right by agreeing to its terms. Cf. Pl. Agmt. (Doc. No. 182) ¶ 11 ("The attorneys for the defendant further advise the Court that: a) ... the defendant has been advised of the defendant's right to not plead guilty and to be tried by

a jury on all issues discussed in this Plea Agreement ...."). Nor was Davidson advised that he was waiving his right to a judicial determination of his breach during his plea colloquy.  <u>Cf</u>. Pl. Change Trans. (Doc. No. 282) at 14:18-25 ("Mr. Davidson, your Plea Agreement contains a provision wherein you agree to waive your rights to appeal or to collaterally attack ... your conviction or sentence or both.  Do you understand that ordinarily absent such a provision, that you would be able to take an appeal and that if you could not afford an appeal then a free lawyer and a transcript could be provided...?"). Even if he could waive this right, the court therefore is unconvinced that Davidson knowingly did so.

Beyond these constitutional infirmities, the court also questions whether affording the government the sole power to declare a breach would render it unenforceable under contract-law principles.  To make an agreement enforceable, the parties to a contract generally must "promise to do something which will yield a benefit or

11

advantage to the other, or which will result in a detriment or disadvantage to himself in exchange for the other promise." Johnston Enterprises of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1310 (11th Cir. 1998) (quoting Williston on Contracts § 7:6 at 77-79, 87). If "one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor--who says, in effect, 'I will if I want to'"-- then that promise is illusory, and the contract is unenforceable. Id. (quoting Farnsworth, Contracts § 2.13 at 75-76 (1990)); see also Swinehart, 614 F.2d at 858 ("The Government will not be allowed to avoid the obligation it ... incurred by claiming now that the language literally promises nothing to the defendant.") (quoting United States v. Bowler, 585 F.2d 851, 854 (7th Cir. 1978)). A plea agreement under which the government promises to perform unless, in its "sole" judgment, it no longer must, is just the sort of "I will if I want to" agreement that courts do not enforce. Indeed, if the

12

provision were read as the government wants, the government would have no obligation to comply with the agreement, for the agreement would be only an unrequited one-way obligation on Davidson and thus not an agreement at all in the sense of imposing binding mutual obligations.

Mindful of the due-process considerations of any agreement between a defendant and the government and wary of the government's preferred interpretation, the court will thus independently decide whether Davidson violated the cooperation provision of his plea agreement.

B. Breach

The government bears the burden of proving Davidson breached the agreement by a preponderance of the evidence. See <u>United States v. Garcia-Bonilla</u>, 11 F.3d 45, 46 (5th Cir. 1993); <u>Iacullo v. United States</u>, __ F. Supp. 2d __, 2010 WL 4722479 at *3 (S.D. Fla. 2010) (White, M.J.). The government contends that Davidson

13

breached the provisions requiring him to be "truthful at all times" and "fully and truthfully respond to all questions that are asked of him."  Add. to Pl. Agmt. (Doc. No. 183) 2 at ¶ 1.

After weighing the testimony and evidence available, the court finds that Davidson failed "fully and truthfully" to answer the questions of federal investigators and that this failure amounted to a material breach of the agreement as follows.

Davidson omitted critical information about his actions inside the lieutenant's office with Mack and Officer Scottie Glenn, specifically his actions immediately after escorting Mack into the office.  The events inside the lieutenant's office were critical to the investigation of Mack's beating because Mack's physical condition was demonstrably worse when he left the office than it was when he entered it: he walked into the lieutenant's office with little or no support from the officers but was placed on a motorized cart and

14

transported to the Health Care Unit when he left. The time period when Davidson and Glenn were alone in the office with Mack, before co-defendants Lieutenant Michael Smith and Officer Joseph Sanders entered the office, was particularly important in assigning responsibility among the officers for Mack's injuries.

Yet Davidson failed to apprise federal investigators and prosecutors that he acted aggressively towards Mack during this time period, including shaking, shoving, yelling, and swearing at him, and telling him that the lieutenant was going to beat or kill him. He failed to convey this information despite what the federal agent described as "very specific questions about who was doing and saying what in the lieutenant's office." At one meeting, the federal agents even replicated the layout of the lieutenant's office by taping lines on the floor; they then had Davidson go through a role play of his version of the events in the lieutenant's office. This interview lasted several hours, and at no point did

Davidson indicate that either he or Glenn had been aggressive with Mack before Smith entered the room. Instead he told the officers that he and Glenn had Mack stand against the back wall of the lieutenant's office while waiting for Smith to enter.

Following several interviews with the federal investigators, Davidson finally admitted, after being advised by the government that it had serious concerns about the truthfulness of Davidson's statements to them, that he had not been truthful. According to the credible government agent who interviewed him, Davidson "said that he had not provided truthful information regarding [his] actions.... because he didn't want to seem like a monster."[2] He told the government for the first time, on the eve of Smith's trial, that he and Glenn had acted

---

2. The defense disputes the agent's assertion that Davidson himself used the term "monster" to explain why he failed to disclose this information earlier and contends that Davidson's defense attorney offered the phrase as one possible explanation for why he did not make the contested disclosure at an earlier date.

very aggressively towards Mack before Smith came into the office.

Smith's admission was particularly noteworthy in light of Glenn's subsequent statement to investigators that not only had they acted aggressively before Smith entered, but that Davidson actually had struck Mack before Smith entered the office.  The court does not have to resolve whether Davidson did, in fact, strike Mack before Smith came on the scene, in order to resolve the instant motion, and the court will, instead, preserve that question for sentencing.  The court does find, however, that Glenn's statements corroborate Davidson's late-to-the-game admission that the two officers were aggressive and that their aggressive behavior was of the kind that a reasonable person would view as highly relevant to an investigation into the beating and death of a person.  In sum, while, admittedly, there is a spectrum of aggressive behaviors, the court is convinced that the aggression Davidson failed to discuss with the

17

government falls on the end of the spectrum that a reasonable person would know should be revealed if he or she were being completely honest.

The defense argues that Davidson omitted details only and that he did so because the details were unimportant and his actions outside of Smith's presence were benign. But the court left the evidentiary hearing with a distinctly different impression. In his initial interviews with the federal investigators and prosecutors, Davidson painted a picture that while he was with Mack and Glenn in the lieutenant's office he was only waiting for Smith to arrive. The latter admission paints a very different picture, one in which he actively set Mack up for a beating and participated in it from the start. The court is convinced that Davidson concealed the latter, knowing that he was not telling the whole truth and was misleading the government.

In sum, the court finds that Davidson materially breached the cooperation provision of his plea agreement.

\*\*\*

Accordingly, it is ORDERED that defendant Matthew Davidson's motion for specific performance of his plea agreement (doc. no. 433), in which he asks that the court find that he has been compliant with the terms of the agreement and has not otherwise materially breached the plea agreement, is denied.

DONE, this the 12th day of August, 2013.

    /s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**